## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MPH Restaurants, LLC, | ) | Bankr. No. 26-05071 |
| | ) | |
| Debtor. | ) | Chief Judge Jacqueline P. Cox |

### Memorandum Opinion

Creditor R Restaurant Group, LLC ("RRG") asks that the court order the appointment of a trustee. The motion will be granted as the court finds that cause to do so has been shown by clear and convincing evidence.

### Jurisdiction

Federal district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code. 28 U.S.C. § 1334(a). The district courts may refer cases under title 11, and any or all proceedings arising under title 11 or arising in or related to a case under title 11, to the bankruptcy judges for their district. 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has referred its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Operating Procedures 15(a); Northern District of Illinois Local Rule 40.3.1.(a).

Bankruptcy courts have statutory authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Core proceedings include this motion, an effort to allow a trustee to manage the estate, a matter "concerning the administration of the

estate." 28 U.S.C. § 157(b)(2)(A).

## Background

The Debtor, MPH Restaurants, LLC, owns 100% of the membership interests of three Illinois limited liability companies:  Smith & Wells LLC, LaSalle Street LLC and Madison Restaurant LLC.  (" Smith & Wells," "LaSalle" and "Madison") (collectively "the subsidiaries"). Smith & Wells currently operates the Randolph Tavern.  LaSalle once operated the City Social Restaurant and Madison once operated the Madison Tavern; those two establishments closed within the past year.

Before 2021, R Restaurant Group owned the subsidiary LLCs and operated the restaurants.  RRG sold the subsidiaries to the Debtor for approximately $1.935 million in 2021. Payment was to be made weekly in amounts equal to 10% of the businesses' pre-tax gross revenue.  RRG was granted a first-priority security interest in the Debtor's membership interests in the LLCs as well as security interests in the Debtor's other assets including the LLCs' deposit accounts and accounts receivable.

In 2024, the Debtor was sold to Marc Hochmuth with RRG's consent.  RRG was to be paid $1,633,212.93, principal, plus $81,660.65 late charges and $20,000 fees and costs via weekly installments of 10% of the pre-tax gross revenue of the restaurants.  The Debtor, the subsidiaries and Hochmuth ratified RRG's security interests in the membership interests and the Debtor's other property.  Motion to Appoint Trustee, Docket 15,  pp. 3-4; Response to Motion to Appoint Trustee, Docket 22, p. 3.

According to creditor RRG, soon after Hochmuth purchased the Debtor, the Debtor failed to make payments due under the 2024 agreement.  Through online access to the LLCs' bank

accounts RRG observed that Hochmuth frequently paid himself, withdrew large amounts of cash and charged his personal expenses to the subsidiary LLCs. Declaration of Rachel Dennis, Docket 15, Exhibit E, p. 2 ("Declaration"). Dennis, a member of RRG, has over 15 years experience in the restaurant industry.

The Debtor's principal Marc Hochmuth has admitted that he has used funds belonging to the Smith & Wells LLC for personal expenses: eating out, going to bars and groceries. Transcript of April 23, 2026 Section 341 Meeting, Docket 15, Exhibit F, pp. 14-15. ("Transcript"). These were not made for corporate or business purposes. Also, see the Declaration, ¶ 11, where Dennis states that Hochmuth charged Instacart transactions and bar and restaurant tabs to LaSalle's bank account.

Her Declaration discloses Marc Hochmuth's practice of writing several checks to himself totaling $12,500 from LaSalle's bank account from January to April 2025. Declaration, ¶ 7.

Two of the Debtor's restaurants ceased operating after Mr. Hochmuth became the Debtor's managing member. He refers to himself as the Debtor's managing member in the Official Form 201- the Voluntary Petition for Non-Individuals Filing for Bankruptcy, Docket 1, p. 4.

In October 2024 through the end of that year Hochmuth wrote checks to himself totaling $17,816 from LaSalle's account. From January to April 2025, Hochmuth wrote checks to himself totaling $12,500 from LaSalle's account. *Id.*

In April 2025 he wrote checks to himself totaling $6,700 from Madison's account. *Id.*

From late 2024 onward Hochmuth wrote dozens checks paid to the order of "Petty Cash" from subsidiaries' bank accounts. For example he wrote three checks totaling $9,500 to be paid

to "Petty Cash" from LaSalle's account between December 18, 2024 and December 23, 2024. Ms. Dennis notes therein that this amount and frequency of cash withdrawal is highly unusual. *Id.*

Four checks totaling $33,000 were written by Hochmuth or a staff member totaling $33,000 to be paid to "Petty Cash" from Smith & Wells' account within four days, from March 14, 2025 to March 18, 2025. *Id.*

Hochmuth or a staff member wrote three checks totaling $17,000 to be paid to "Petty Cash" from Madison's account within six days, March 14, 2025 to March 20, 2025. *Id.*

She also opined that the timing and amount of Petty Cash checks was highly unusual. *Id.*

Dennis' Declaration states that Hochmuth continued to pay himself and for his personal expenses after the petition date. Declaration, ¶ 10. None of Dennis' Declaration was disputed at the June 23, 2026 hearing on the motion to appoint a trustee.

RRG obtained a default judgment against Hochmuth and the Debtor in December 2025 in state court. After a citation to discover assets was served, this bankruptcy case was filed on March 23, 2026. right before a hearing in state court in connection with the citation to discover assets. Declaration, ¶ 9.

## Analysis

The Debtor's position is that this case should be dismissed on its motion because the Debtor is an empty shell and that its filing was an error. Transcript, p. 10. However, the Debtor owns three LLCs, one of which has an operating restaurant, the Randolph Tavern, operated by the Smith & Wells LLC. Mr. Hochmuth admitted this at the Section 341 meeting when he testified that he owns the Debtor (page 7) and that the Debtor owns 100% of the subsidiaries, the

-4-

three LLCs (page 8). Two of the entities no long operate restaurants.

The court does not believe that this case's filing was a mistake. The judgment is directed at it and Hochmuth, jointly and severally. Amended Final Judgment Order, Docket 15, Exhibit A. This may be an effort to frustrate and delay the creditor by switching which entity files for bankruptcy relief. Does this amount to an effort to misdirect the creditor?

The Debtor's position that it is an empty shell belies the fact that it owns a functioning restaurant which Mr. Hochmush says operates positively. When asked about the financial status of Randolph Tavern, Hochmuth answered that it is positive. Transcript, p. 17. Because the judgment that precipitated this bankruptcy filing was entered against the Debtor, MPH Restaurants, LLC, and Marc Hochmuth, jointly and severally, it is difficult to understand why one of those judgment debtors does not need bankruptcy relief.

The Debtor initially said it wants to dismiss this case and file a case for Smith & Wells LLC. No bankruptcy case has been filed for Smith & Wells LLC. The court was told at the June 23, 2026 hearing that Smith & Wells LLC would not file a bankruptcy case. Marc Hochmuth has filed a chapter 11 bankruptcy case. *See In re Marc Hochmuth*, Bankruptcy Case 26-09800 in the Northen District of Illinois Bankruptcy Court.

. The Debtor had a reason to file for bankruptcy protection, to take advantage of the automatic stay that comes into existence at filing. 11 U.S.C. § 362(a). The Debtor was trying to forestall or prevent its creditor from taking the one operating entity, Smith & Wells LLC.

To suggest that the Debtor is so hollow and bereft of assets that a bankruptcy is not necessary may be misleading, bolstering the movant's request for the appointment of a trustee. Because the state court judgment addresses this Debtor, who has an asset, Smith & Wells LLC,

-5-

this court has not been shown that because it has no assets, the bankruptcy petition was filed for the wrong entity as Debtor's counsel suggests.

The Debtor and its principal may be trying to frustrate and harass its creditor by suggesting that it has no assets.

The court has been told that the cash withdrawals and other expenses may have continued after the bankruptcy petition was filed. Declaration, ¶ 10. This may amount to the use of use cash collateral.

The Bankruptcy Code defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest.. . ." 11 U.S.C. § 363(a). Section 363(c)(2) provides that a debtor or trustee may not use, sell or lease cash collateral unless the entity that has an interest in it consents or the court, after notice and a hearing, authorizes such use, sale or lease. There is no such motion on the docket of this case. RRG has a security interest in the subsidiaries' member interests and bank accounts. Whether RRG has consented to the use of cash collateral is unknown.

### Section 1104 of the Bankruptcy Code

Appointment of a chapter 11 trustee is governed by section 1104 of the Bankruptcy Code. It states that "at any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee — for cause, . . .." 11 U.S.C. § 1104(a). The triggering conditions include "(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the

-6-

commencement of the case, or similar cause . . ." and (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." Sections 1104(a)(1) & (2).

Section (a)(1) mandates the appointment of a trustee when cause is found. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir. 1989). Section (a)(2) creates a more flexible standard. However, both sections leave the determination of whether cause exists to the discretion of the court. *In re Fuller's Service Center, Inc.*, 675 B.R. 575, 579 (Bankr. N.D. Ill. 2025) (internal citations omitted). Courts have to assess "(1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for rehabilitation; (3) whether the business community and creditors of the estate have confidence in the debtor; and (4) whether the benefits outweigh the costs." *In re LHC, LLC*, 497 B.R. 281, 293 (Bankr. N.D. Ill. 2013) (internal citation omitted).

The decision to appoint a trustee has to made on a case-by-case basis. *In re Sharon Steel*, 871 F.2d at p. 1226. In addition, the appointment of a trustee should be the exception, rather than the rule. Usually debtors remain in possession in chapter 11 cases. There is a strong presumption against appointing an outside trustee as there is often no need for one. The presumption is based on the debtor-in-possession's familiarity with the business it has already been managing at the time of the bankruptcy filing, making it the best party to conduct operations during the reorganization. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3rd Cir. 1998).

The party seeking appointment of a chapter 11 trustee has to show by "clear and

convincing evidence" that the extraordinary remedy of appointing a trustee is justified. That burden of proof has been met. The several withdrawals of funds posits serious issues of mismanagement.

Appointment of a chapter 11 trustee herein is justified under Sections (a)(1) and (a)(2).

The facts support appointment of a trustee under Section (a)(1) on two grounds. First, the representation that the Debtor has no assets is not convincing. It owns and operates a restaurant that is a positive asset. The second ground is the potential misdirection shown the court in that the Debtor first said it wanted to dismiss this case to file a case for Smith &Wells. Lately the court has been told that Smith & Wells will not file a bankruptcy petition, while Hochmuth has filed a bankruptcy petition. The court and creditors need a trustee in place to get solid, credible information about the Debtor's financial condition and which entity is actually in need of bankruptcy relief. That Hochmuth has made several withdrawals from the subsidiaries' bank accounts tells the court that Debtor's managing member can't be trusted. The withdrawals justify a finding of cause, and support the appointment of a trustee. Creditor RRG does not have confidence in the debtor. If a trustee can make decisions about the Debtor's future in a timely manner, the benefit of having a trustee could outweigh its costs.

Appointment of a chapter 11 trustee under Section (a)(2)'s more flexible standard is also justified. The Section (a)(2)'s requirement is met as it is in the interest of creditors to appoint a trustee to obtain reliable information about the Debtor's condition and to discern whether it should be in bankruptcy.

## Conclusion

The Motion to Appoint a Trustee is granted. The United States Trustee is directed to

-8-

appoint a trustee in this case.

This Memorandum Opinion reflects the court's findings of fact and conclusions of law.

A separate order will be entered granting the Motion to Appoint a Trustee.


**Date:   July 9, 2026**                            **ENTERED:**

_____

**Jacqueline P. Cox**
**Chief Bankruptcy Judge**

-9-